Steven T. Lowe (SBN 122208)
Kris S. LeFan (SBN 278611)
**LOWE & ASSOCIATES, P.C.**
11400 Olympic Boulevard, Suite 640
Los Angeles, California 90064
Telephone: (310) 477-5811
Facsimile: (310) 477-7672
Email: kris@lowelaw.com

Attorneys for Plaintiff:
**STEPHEN HENDRICKS**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **STEPHEN HENDRICKS**, an individual, | ) Case No.: 2:14-CV-02989-RSWL-SSx |
| **Plaintiff,** | ) |
| v. | ) **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;** |
| **NEW VIDEO CHANNEL AMERICA, LLC d/b/a BBC AMERICA,** a Delaware limited liability company; **TEMPLE STREET PRODUCTIONS,** a business entity, form unknown; **TEMPLE STREET PRODUCTIONS (US) INC.,** a California corporation; **DAVID FORTIER**, an individual; **GRAEME MANSON,** an individual; **JOHN FAWCETT,** an individual; and DOES 1 to 50, inclusive, | ) **[Filed concurrently with Declarations of Steven T. Lowe and Stephen Hendricks]** |
| | ) Date:   May 5, 2015 |
| | ) Time:   10:00 a.m. |
| **Defendants.** | ) |

# **TABLE OF CONTENTS**

A. INTRODUCTION…………………………………………….…1

B. FACTUAL BACKGROUND……………………………....………1

C. ARGUMENT……………………………………………….5

   1.     This Court Has Personal Jurisdiction Over Temple Street Productions

      And David Fortier……………………………………………5

        a.    General Jurisdiction…………………………….……5

        b.    Specific Jurisdiction…………………………..……….10

          i.     The Ninth Circuit Three-Part Test………………13

      CONCLUSION……………………………………………….…..17

## **TABLE OF AUTHORITIES**

1.  *Ballard v. Savage,* 65 F.3d 1495 (9th Cir. 1995)………………....……..14, 15

2.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985)………..……11

3.  *Calix Networks, Inc. v. Wi-LAN, Inc*., 2010 U.S. Dist. LEXIS 97657 (N.D. Cal. 2010)……………………………………………………………………7

4.  *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126 (9th Cir.1995)……………………………………………….……....…15

5.  *Chandler v. Roach*, 156 Cal.App.2d 435 (1957)…………………………14

6.  *Colo'n v. Akil*, 449 Fed. Appx. 511 (7th Cir. Ind. 2011)…….….………17

7.  *Desny v. Wilder*, 46 Cal. 2d 715 (1956)………………………..…………15

8.  *Doe v. Unocal Corp.,* 248 F.3d 915 (9th Cir. 2001)………………….....…6

9.  *Ham v. La Cienega Music Co*., 4 F.3d 413 (5th Cir. Tex. 1993)…….…16

10. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir. 1994)……………………………………12

11. *LSI Indus. v. Hubbell Lighting, Inc*., 232 F.3d 1369 (Fed. Cir. 2000)………6

12. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560 (2d Cir. 1996)……………………………………………………………….…6

13. *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999)………..…..5, 15

14. *Omeluk v. Langsten Slip & Batbyggeri* A/S, 52 F.3d 267 (9th Cir. 1995)...11

15. *Outdoor Channel, Inc. v. Performance One Media, LLC*, 826 F. Supp. 2d 1271 (N.D. Okla. 2011)…………………………………………....….16

16. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)…..….…11

17. *Stanley v. Columbia Broadcasting System, Inc.* 35 Cal.2d 653 (1950)…...14

18. *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163 (9th Cir. 2006)……..6

19. *United States v. Toyota Motor Corp.,* 561 F. Supp. 354 (C.D. Cal. 1983)..11

20. *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406 (9th Cir. 1977)………………………………………………………..……7

21. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006)………….…………………………………..5

# MEMORANDUM OF POINTS AND AUTHORITIES

## A. INTRODUCTION

Defendants' Motion to Dismiss (the "Motion) omits key facts. The distribution of "Orphan Black" (the "Series") in California is not the sole grounds for personal jurisdiction over these Defendants. Rather, as discussed herein, Defendant Temple Street Productions has a Los Angeles office, and David Fortier ("Fortier") is CEO of a California corporation, i.e., Temple Street Productions (US), Inc. Among other highly pertinent facts, Temple Street Productions issued press releases where it has held itself out to the public as having "expanded" its operations into Los Angeles in 2013, and the Temple Street Productions website (of which there is only one) shows one address in Toronto, Canada, and a second one in Santa Monica, California. The same website touts the success of the show at issue, "Orphan Black." Furthermore, the Series is advertised and sold in different formats in California, and reaches approximately 5 million households in California alone. Based on the foregoing (and numerous other contacts more fully set forth herein), Defendants Fortier and Temple Street Productions have sufficient minimum contacts with California to be subject to personal jurisdiction.

## B. FACTUAL BACKGROUND

(The following is an overview of the facts; other and further facts with supporting evidence pertinent to the issues before the Court are set forth in the

Argument section of this Opposition.)

In or about 1998-1999, Plaintiff Stephen Hendricks ("Plaintiff" or "Hendricks") authored an original screenplay entitled "Double… Double…" (the "Screenplay"). See, ¶ 2 of Declaration of Stephen Hendricks ("Hendricks Decl.") Thereafter, on January 5, 1999, Plaintiff registered the Screenplay with the Writers Guild of America ("WGA") (see, ¶ 3, Exhibit A to Hendricks Decl.) and on August 21, 2000, registered the same with the U.S. Copyright Office, registration no. PAu 2-534-750 (see, ¶ 4, Exhibit B to Hendricks Decl.).

In or about October 2004, Plaintiff called Temple Street Entertainment and was told by an assistant to email David York ("York") a summary of Plaintiff's Screenplay. See, ¶ 5 of Hendricks Decl. On or about October 14, 2004, Plaintiff emailed York a one-page summary of his Screenplay to which York replied via email on or about October 20, 2004, directing Plaintiff to send his Screenplay to Temple Street Entertainment, to the attention of Defendant David Fortier ("Fortier") (see, ¶ 6, Exhibit C to Hendricks Decl.).

On or about October 20, 2004, Plaintiff submitted his Screenplay to Fortier. See, ¶ 7 of Hendricks Decl. At that time, Fortier was Co-President of Temple Street Entertainment. See, Deposition of David Fortier, Page 10, Lines 13-16; Page 10, Lines 22-25; Page 11, Lines 1-2 (the Deposition of D. Fortier is attached as Exhibit C to the Declaration of Steven Lowe ("Lowe Decl."). Thereafter, Plaintiff

emailed Fortier on or about November 9, 2004, to inquire whether Temple Street was interested in the Screenplay. See, ¶ 8 of Hendricks Decl. In response, Plaintiff received an email from Fortier on November 15, 2004, stating Temple Street Entertainment (and Fortier) was going to "pass" on Plaintiff's Screenplay (see, ¶ 8, Exhibit D to Hendricks Decl.). See also, Exhibit 3 to Deposition of D. Fortier.

Fortier and Ivan Schneeberg ("Schneeberg") subsequently purchased Temple Street Entertainment in or about 2007. See, Deposition of D. Fortier, Page 11, Lines 17-23; Page 12, Lines 17-25. In or about July 2013, Temple Street Productions "expanded" into Los Angeles, California, with Fortier as CEO (see, Deposition of D. Fortier, Page 15, Lines 3-16); their address is 1524 E. Cloverfield Blvd., Santa Monica, California, 90404. See, ¶¶ 9, 10, Exhibits E, F to Hendricks Decl.; Exhibit D to Lowe Decl.; Deposition of D. Fortier, Pages 100-101; Exhibits 10, 12, 18 to Deposition of D. Fortier. Temple Street Productions is credited on screen as the producer of the television series at issue, "Orphan Black" (the "Series") and Fortier is credited on screen as "Executive Producer" thereof. See, ¶ 11, Exhibit G to Hendricks Decl.; Exhibits 15, 16, 17 to Deposition of D. Fortier.

On or about March 4, 2013, Plaintiff discovered that BBC America was airing the Series containing *inter alia* the same, unusual core copyrightable expression as the Screenplay; e.g. the clandestine development of clones and the resulting journey of the young, female protagonist to discover her origins. See, ¶

12 of Hendricks Decl. Plaintiff also discovered that Temple Street Productions (formerly Temple Street Entertainment) produced the Series and that David Fortier, Co-President of Temple Street Productions, is Executive Producer of the Series. See, ¶ 12 of Hendricks Decl.

While Co-Defendants John Fawcett ("Fawcett") and Graeme Manson ("Manson") are credited as creators of the Series (see, ¶ 11, Exhibit G of Hendricks Decl.), in a published interview dated May 31, 2013 (see, Exhibit E to Lowe Decl.; Deposition of D. Fortier, Page 114, Lines 16-25; Page 115, Lines 1-25; Exhibit 14 to Deposition of D. Fortier) with Fortier and Schneeberg, Co-President of Temple Street Productions, Fortier and Schneeberg indicate that they are substantial creators of the Series (thereby directly contradicting Fortier's testimony submitted to this Court). See, ¶ 16 of Declaration of David Fortier in support of Defendants' Motion to Dismiss. Fortier stated that Temple Street Productions received a "sort of spec script" for the Series from Manson and Fawcett that was developed significantly with Fortier and Schneeberg over about four (4) years. See, Exhibit E to Lowe Decl. In the same interview, Fortier stated that Fawcett and Manson "were friends of ours" and "guys that we have always wanted to work with" and that Fortier had "been looking for projects to work with them on." See, Exhibit E to Lowe Decl. In addition, Fawcett formerly directed episodes of the Temple Street Productions television shows "Queer As Folk" from 2002 to 2005 and "Being

Erica," while Manson was a writer on former Temple Street Productions show "Being Erica". <u>See</u>, Exhibit E to Lowe Decl.

Based upon the foregoing, Plaintiff filed an action for copyright infringement and breach of implied contract on April 17, 2014. <u>See</u>, ¶ 13 of Hendricks Decl.

## C. ARGUMENT

### 1. This Court Has Personal Jurisdiction Over Temple Street Productions And David Fortier

The plaintiff has the burden of proving jurisdiction exists; however, in the preliminary stages of litigation, the plaintiff's burden is light, and disputed facts must be resolved in favor of the plaintiff. *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999) ("In opposing a motion to dismiss for lack of personal jurisdiction, the plaintiff must present a prima facie case that personal jurisdiction exists over the defendants… The court is required to resolve disputed facts in the light most favorable to the plaintiff." *Id*.)

### a. General Jurisdiction

The exercise of personal jurisdiction over a defendant comports with federal due process only if the defendant "has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le*

*Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (internal quotation marks omitted). Sufficient minimum contacts gives rise to general jurisdiction or specific jurisdiction. *Doe v. Unocal Corp.,* 248 F.3d 915, 923 (9th Cir. 2001). General jurisdiction applies if the defendants' activities in the forum "are substantial, continuous and systematic," even if the cause of action is unrelated to those activities. *Id.*

There is no precise checklist of factors for evaluating general jurisdiction. Rather, the assessment of minimum contacts is fact-specific and must necessarily be tailored to the circumstances of each case. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996). Courts have considered, among other factors, "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).

Courts have found sufficient minimum contacts to support general jurisdiction in a variety of situations. See, *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) ("Based on Hubbell's millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that Hubbell maintains 'continuous and systematic' contacts with Ohio." *Id.*) See also, *Metropolitan Life Ins. Co. v.*

6

1    *Robertson-Ceco Corp*., <u>supra</u> at 573 (Sufficient contacts for general jurisdiction

2    where defendant made significant revenue in sales from the forum state, had

3    relationships in-state with dealers and builders, advertised to forum state residents,

4    and deliberately targeted sales prospects in-state). The Court may examine contacts

5    with a foreign state "over a period of years *before* and up to inception of the suit,

6    on a case-by-case basis." *Calix Networks, Inc. v. Wi-LAN, Inc*., 2010 U.S. Dist.

7    LEXIS 97657, 11 (N.D. Cal. 2010).

8        Additionally, a corporation may be sufficiently "present" to be subject to

9    general jurisdiction by operating a "division" in a forum. *Wells Fargo & Co. v.*

10   *Wells Fargo Express Co*., 556 F.2d 406, 425 (9th Cir. 1977). Two separately

11   incorporated entities may be treated as one "where the corporate vehicle is

12   employed as a device by which to conduct 'continuous and systematic' activities in

13   a state", i.e., the subsidiary is essentially the "alter ego" of the out-of-state parent.

14   *Id*. Factors to be considered in establishing an "alter ego" relationship in the

15   jurisdictional context include the following: "whether the officers and directors of

16   the two are the same; whether the subsidiary pays cash for products sold or service

17   rendered to it by the parent; whether separate books, bank accounts, tax returns,

18   financial statements and the like are kept; and whether the parent corporation holds

19   the subsidiary out as an agent, either expressly or impliedly as by representing it is

20   doing business in, or has an office in the state, when only the subsidiary is

1   present." *Id*. at 426.

2       Fortier and Temple Street Productions both have sufficient minimum

3   contacts with California for this Court to exercise general jurisdiction. Fortier is the

4   CEO of the California corporation, Temple Street Productions (US), Inc. <u>See</u>,

5   Exhibit A to Declaration of Steven Lowe ("Lowe Decl."). Temple Street

6   Productions (US) was incorporated in 2013, with offices located at 1524 E.

7   Cloverfield Blvd., Santa Monica, California, 90404. <u>See</u>, Exhibit D to Lowe Decl.

8   On the Statement of Information filed with the California Secretary of State,

9   Fortier is named as Chief Executive Officer and Director, with an address

10  attributed to Fortier in California. <u>See</u>, Exhibit D to Lowe Decl. The type of

11  business is described as "Production of Film and TV" (the same type of business as

12  Temple Street Productions), and the form was completed on April 18, 2013 by

13  David Fortier. <u>See</u>, Exhibit D to Lowe Decl.

14      Temple Street Productions (US) is a wholly owned subsidiary of Temple

15  Street Productions (<u>see</u>, Deposition of D. Fortier, Page 15, Lines 23-25, Page 16,

16  Line 1). Fortier is also personally an owner of Temple Street Productions (US),

17  through his ownership of Temple Street Productions (<u>see</u>, Deposition of D. Fortier,

18  Page 15, Lines 8-16). Temple Street Productions (US) is heavily advertised as the

19  "U.S. office" of Temple Street Productions; Temple Street Productions website

20  (which both entities share) prominently displays a statement from Fortier, which

reads in relevant part: "The opening of the U.S. office in Los Angeles is an important and strategic next step in the continued growth of Temple Street." <u>See</u>, Exhibit E to Hendricks Decl. The Temple Street Productions (US) office is also listed and contact information is posted on the Temple Street Productions website. <u>See</u>, Exhibit F to Hendricks Decl.; Deposition of D. Fortier, Pages 100-101. Furthermore, this same website touts the success of the Series, for which Temple Street Productions and Fortier are the production company and executive producer, respectively. <u>See</u>, Exhibit H to Hendricks Decl.

Additionally, the Los Angeles office shares several executive officers with Temple Street Productions, including Fortier (CEO of Temple Street Productions (US) and Owner/Director and Co-President of Temple Street Productions), Schneeberg (President of Temple Street Productions (US) and Owner and Co-President of Temple Street Productions), and John Young (CFO and Secretary of Temple Street Productions (US) and Managing Director of Temple Street Productions). <u>See</u>, Temple Street Productions' Response to Special Interrogatory No. 9, Exhibit A to Lowe Decl.; <u>see also</u>, Exhibit D to Lowe Decl. Notwithstanding his position, Fortier "didn't know" whether Temple Street Productions and Temple Street Productions (US) maintained separate tax returns, financial statements or bank accounts. <u>See</u>, Deposition of D. Fortier, Page 104, Lines 6-15.

BBC Worldwide owns 25% of Temple Street Productions. See, Deposition of D. Fortier, Page 13, Lines 21-25; Page 14, Line 1. BBC Worldwide has the rights to exploit the Series in all territories outside of Canada, including the United States. See, Deposition of D. Fortier, Page 19, Lines 23-25, Page 20, Lines 1-5. BBC Worldwide has offices in Los Angeles, California, located at 10351 Santa Monica Blvd # 410, Los Angeles, CA 90025 (see, Exhibit F to Lowe Decl.), at which Fortier attended business meetings. See, Deposition of D. Fortier, Page 57, Lines 10-22.

Plaintiff does not currently have information regarding Temple Street Productions' revenues from California. However, the Series is widely advertised and sold in DVD and digital formats in California (more fully discussed hereinbelow). These facts are more than sufficient to establish general jurisdiction over both Defendants.

**b. Specific Jurisdiction**

In the Ninth Circuit, a three-part test is applied to determine whether specific jurisdiction may be exercised over a defendant: "(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the

defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Omeluk v. Langsten Slip & Batbyggeri* A/S, 52 F.3d 267, 270 (9th Cir. 1995)

Purposeful availment occurs where a nonresident defendant creates a "substantial connection" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985). For example, where the defendant "'deliberately' has engaged in significant activities within a State" or "has created 'continuing obligations' between himself and residents of the forum", he has availed himself of the privilege of conducting business in the forum. *Id.* at 475-476. A foreign corporation purposefully avails itself of business opportunities where it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *United States v. Toyota Motor Corp.*, 561 F. Supp. 354, 359 (C.D. Cal. 1983). This is the case regardless of the means in which exploitation of the market is carried out, e.g., whether products reach the market through a subsidiary rather than the parent corporation. *Id*.

In tort cases, jurisdiction may attach under "the Effects Doctrine", where defendant's conduct is "aimed at or has an effect in the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). In a trademark infringement case (analogous to the instant copyright infringement case), the *Panavision* court found that a defendant was subject to personal jurisdiction where

11

he had registered the plaintiff's trademark as his domain name on the internet, stating "[t]he brunt of the harm to Panavision was felt in California. Toeppen knew Panavision would likely suffer harm there because… its principal place of business was in California, and the heart of the theatrical motion picture and television industry is located there." *Id*. at 1321. Other courts have found personal jurisdiction under the Effects Doctrine even where the only activity directed at a state was the broadcast of the alleged infringement on nationwide television. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410, 411 (7th Cir. 1994) (Broadcast of games in Indiana is sufficient because the trademarks defended by the plaintiff are used "mainly in Indiana". Thus, if the trademarks are impaired, the injury will be felt in Indiana, and by their conduct, the defendants "assumed the risk" of "injuring valuable property located in Indiana". *Id*.)

Beyond the connections to California discussed under general jurisdiction, which constitute a substantial, continuous, and deliberate connection with the forum, the Series is widely advertised and sold in California in digital and DVD formats, as Defendants admitted in its Responses to Special Interrogatories. See, Response No. 24, Exhibit A to Lowe Decl.; New Video Channel America, LLC d/b/a BBC America Responses to Special Interrogatories No. 4, 7, 8, 9, Exhibit B to Lowe Decl. The BBC America channel, and thus, the Series, currently reaches 5

million homes in California, and the Series is advertised to the California market "through several different media". <u>See</u>, Responses No. 3 and 4, Exhibit B to Lowe Decl.  Defendants argue that the Series is produced by subsidiaries of Temple Street Productions and distributed by New Video Channel, LLC; however, these facts do not shield Temple Street Productions from personal jurisdiction in California. Furthermore, under the Effects Doctrine, Defendants' conduct is aimed at and has an effect on California. Plaintiff resides and works in California, and the injury to his copyrighted Screenplay is felt here. <u>See</u>, ¶ 15 of Hendricks Decl.

Furthermore, Defendants pitched the Series in California to various broadcasters including ABC, CBS, FOX, Syfy and AMC (<u>see</u>, Deposition of D. Fortier, Page 52, Line 25, Page 53, Lines 1-7.) Defendants also specifically solicited interviews pertaining to the Series in California. <u>See</u>, Page 1 of Exhibit E to Lowe Decl. Temple Street Productions and Fortier individually have talent agents in Los Angeles at Creative Artists Agency since 2008 or 2009 (<u>see</u>, Deposition of D. Fortier, Page 53, Lines 24-25, Page 54, Lines 1-4; Page 54, Lines 23-25), which Fortier has met with approximately five times in Los Angeles regarding potential projects, including once to pitch the Series in 2011 (<u>see</u>, Deposition of D. Fortier, Page 56, Line 25, Page 57, Lines 1-7).

### i. The Ninth Circuit Three-Part Test

The Ninth Circuit applies a "but for" test to decide whether a defendant

meets the second requirement of "arising out of" or "resulting from" forum-related activities. *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir. 1995). Thus, the question is: but for Defendants' contacts with the United States and California, would Plaintiff's claims have arisen? *Id.* In 2006, Plaintiff, a California resident, submitted the Screenplay to Fortier and Temple Street. Fortier emailed Plaintiff to "pass" on the Screenplay, then copied and took valuable ideas and copyrightable expression from Plaintiff's Screenplay to create the Series. See, Plaintiff's Complaint. These actions, specifically Defendants' business transaction with a California resident, gave rise to Plaintiff's claims[1]; but for Defendants' conduct, Plaintiff's injury would not have occurred.

On or about March 4, 2013, Plaintiff discovered that Defendants had produced the Series, containing *inter alia* the same, unusual core copyrightable expression as the Screenplay. Plaintiff's claims are based upon, *inter alia,*

---

[1] Plaintiff's implied contract claim is based upon an implied business transaction, of which the most important element (i.e., the disclosure by plaintiff of his ideas) took place in California. See, *Chandler v. Roach*, 156 Cal.App.2d 435, 441 (1957); ("An 'idea, if valuable, may be the subject of contract. While the idea disclosed may be common or even open to public knowledge, yet such disclosure if protected by contract, is sufficient consideration for the promise to pay.'" *Id.*) See also, *Stanley v. Columbia Broadcasting System, Inc.* 35 Cal.2d 653, 674 (1950). ("Even though an idea is not properly subject to exclusive ownership, its disclosure may be of substantial benefit to the person to whom it is disclosed. That disclosure may therefore be consideration for a promise to pay." *Id.* (Traynor, J., dissenting)). Plaintiff's copyright infringement claim is based upon the exploitation of the Series, which exploitation substantially occurs in California. See, Exhibit A to Lowe Decl.

Defendants' sales, distribution, broadcasting and advertising in California. The Series premiered in California (and throughout the U.S.) in or about March 2013.

Finally, once the first two factors (i.e., purposeful availment and "but for" causation) are established, Defendants have the burden of showing unreasonableness by "presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (citation omitted). The burden of defending in the forum state is generally considered, however unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1100 (N.D. Cal. 1999), citing *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir.1995).

Considering that Temple Street Productions has a Los Angeles branch, of which Fortier is the CEO, it is unlikely that the inconvenience would be unreasonable. Furthermore, Plaintiff submitted the Screenplay directly to Fortier with the implied understanding that Plaintiff would be compensated if Fortier used the ideas, which Fortier then used, creating an implied contract under California law. See, *Desny v. Wilder*, 46 Cal. 2d 715, 739 (1956). Because Plaintiff's Complaint includes a cause of action that arises under California law, and assuming Canada has a similar provision, this would lead to multiple actions

arising out of the same facts, unduly burdening the Plaintiff and the courts, and potentially leading to inconsistent results.

In their Motion, Defendants rely on the argument that broadcasting "in and of itself" does not subject a defendant to personal jurisdiction in a particular forum, and cite to several cases (from other circuits) in support thereof. However, that is not the case here. In one case relied on by Defendants, only one weak contact with the forum state existed where the defendant had a contract (not the subject of the action) with a third party, to which the plaintiff was not a party. *Outdoor Channel, Inc. v. Performance One Media, LLC*, 826 F. Supp. 2d 1271, 1289 (N.D. Okla. 2011). This is not analogous to the instant case; here, Plaintiff and Defendants formed an implied contract under California law. Furthermore, Defendants have contracts in this state which relate to the Series, including an agency agreement with CAA and some kind of agreement with BBC to be credited on the Series.[2]

Likewise, in *Ham v. La Cienega Music Co*., the only connection of a foreign defendant to the forum state of Texas was distribution of an allegedly infringing song within Texas, and the plaintiff alleged no injuries flowing from the distribution of the song in Texas, or any other contact with Texas whatsoever. *Ham*

---

[2] Although Fortier admits that Temple Street Productions and Fortier individually receive on-screen credits on the Series, Fortier claims to have no knowledge about any contract which would grant those credits. See, Deposition of D. Fortier, Page 106, Lines 17-22; Page 108, Lines 2-16.

*v. La Cienega Music Co*., 4 F.3d 413, 416 (5th Cir. Tex. 1993). Defendants can not successfully allege that they have absolutely no contact with California. As discussed hereinabove, Fortier is the CEO of a California corporation which is held out to be the "U.S. office" of Temple Street Productions, and is in fact, a wholly-owned subsidiary in Temple Street Productions; thus, Defendants regularly do business in California, and purposefully avail themselves of the protections and benefits of the California's laws.

Finally, in the *Akil* case, the plaintiff did not allege that defendant had any business contacts with the forum state, let alone continuous and systematic contacts sufficient to exercise general jurisdiction over defendant, and defendant had not availed itself of the privileges of conducting business in the forum state sufficient for specific jurisdiction. *Colo'n v. Akil*, 449 Fed. Appx. 511, 513 (7th Cir. Ind. 2011). None of these cases are on point in this situation. As discussed hereinabove, Temple Street Productions and David Fortier have significant contacts with California beyond merely the broadcast of the Series in California.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied.

Date: April 14, 2015

Respectfully Submitted,

**LOWE & ASSOCIATES, P.C.**

By:     */s/Steven T. Lowe*

Steven T. Lowe, Esq.

Attorney for Plaintiff, Stephen Hendricks