1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  STEPHEN HENDRICKS,           )   2:14-cv-02989-RSWL-SSx
                                 )
12                Plaintiff,     )
                                 )
13       vs.                     )   **ORDER re: Temple Street**
                                 )   **Productions Incorporated**
14                               )   **and David Fortier's**
                                 )   **Motion to Dismiss for**
15  NEW VIDEO CHANNEL AMERICA,   )   **Lack of Personal**
    LLC dba BBC AMERICA; TEMPLE  )   **Jurisdiction Pursuant to**
16  STREET PRODUCTIONS; TEMPLE   )   **Rule 12(b)(2)** [30]
17  STREET PRODUCTIONS (US)      )
    INC.; DAVID FORTIER; GRAEME  )
18  MANSON; JOHN FAWCETT; and    )
    Does 1 to 50, inclusive,     )
19                               )
                                 )
20                               )
                  Defendants.    )
21                               )
                                 )
22  ─────────────────────────────)

23       Currently before the Court is specially appearing

    Defendants Temple Street Productions Incorporated and
24
    David Fortier's (collectively, "Defendants") Motion to
25
    Dismiss for Lack of Personal Jurisdiction Pursuant to
26
    Rule 12(b)(2) [30] ("Motion").
27

28

                                1

1  Upon review of all papers submitted and pertaining
2  to this Motion [30], the Court **DENIES** Defendants'
3  Motion to Dismiss [30].

### I. BACKGROUND

5  Defendants' Motion [30] arises out of Plaintiff
6  Stephen Hendricks's ("Plaintiff" or "Hendricks") Action
7  [1], brought in April 2014, against six named
8  defendants for federal copyright infringement and
9  breach of implied contract under California law.
10 Plaintiff's Action stems from a screenplay called
11 "Double Double" ("Screenplay") written by Plaintiff and
12 submitted in October 2004 to David Fortier of then-
13 "Temple Street Entertainment," which was later absorbed
14 into Fortier's Temple Street Productions company.
15 Compl. ¶¶ 15-16.  On November 15, 2004, Fortier
16 informed Plaintiff via email that Fortier and Temple
17 Street were "going to pass on [Plaintiff's]
18 screenplay."  Hendricks Decl., Ex D., ECF No. 39.
19 Plaintiff alleges that around March 2013, he discovered
20 that BBC America was airing a new television series
21 called Orphan Black ("Series"), which is produced by
22 Fortier and Temple Street Productions Inc., and which,
23 Plaintiff alleges, has the "same, unusual core
24 copyrightable expression as [Plaintiff's] Screenplay."
25 Id. ¶¶ 17, 24, 30; Fortier Decl. ¶ 9, ECF No. 30-1;
26 Fortier Dep. 106:17-22, ECF No. 40-3.

27 The present Motion to Dismiss [30], filed on
28 February 3, 2015, is brought by two of the six named

defendants in this Action: Temple Street Productions Incorporated ("TSPI") and David Fortier ("Fortier"). Plaintiff's Complaint states that TSPI is a "Canadian company, form unknown, doing business in Los Angeles, California," with a business address at 1524 E. Cloverfield Blvd., Santa Monica, California 90404." Compl. ¶ 6. Plaintiff's Complaint states that Fortier is an "individual doing business in Los Angeles California." Id. ¶ 7. The Answer [24] filed by specially appearing Defendants responded that "Temple Street Productions is an entity organized under Canadian law," and denied all other allegations about TSPI and Fortier. Temple/Fortier Answer ¶¶ 6, 8, ECF No. 24. The Motion asserts that TSPI and Fortier "have virtually no contact with the State of California." Mot. Mem. P&A ("Mot.") 1:16-17.

## II. LEGAL STANDARD

A party may move for dismissal of an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Fed. R. Civ. P. 12(b)(2); see Bos. Telecomms. Grp., Inc. v. Deloitte Touche Tohmatsu, 249 F. App'x 534, 536 (9th Cir. 2007). The plaintiff has the burden of proving personal jurisdiction, but "a plaintiff need only make a prima facie showing of jurisdictional facts in order to defeat a motion to dismiss." Adv. Skin & Hair, Inc. v. Bancroft, 858 F. Supp. 2d 1084, 1087 (C.D. Cal. 2012). A plaintiff makes a prima facie showing of personal

jurisdiction if the plaintiff alleges facts that, if true, support a finding of jurisdiction.  Id.  "Where not directly controverted," the plaintiff's version of the facts is "taken as true," and "conflicts between the facts in the parties' affidavits must be resolved in [the plaintiff's] favor."  Doe v. Unocal Corp., 248 F.3d 915, 921-22 (9th Cir. 2001) (internal quotation marks omitted).  However, "mere allegations . . . ., when contradicted by affidavits, are not enough to confer personal jurisdiction of a nonresident defendant."  VBConversions LLC v. New Solutions, Inc, No. CV 13-00853 RSWL (ANx), 2013 WL 2370723, at *3 (C.D. Cal. May 20, 2013) (internal quotation marks and alterations omitted).

   The exercise of personal jurisdiction over a nonresident defendant requires two findings: 1) the forum state's laws provide a basis for exercising personal jurisdiction, and 2) the assertion of personal jurisdiction comports with due process.  Adv. Skin & Hair, 858 F. Supp. 2d at 1087.  Under California's long-arm statute, a court "need only satisfy itself that its exercise of jurisdiction does not exceed constitutional due process limitations."  Doe v. Geller, 533 F. Supp. 2d 996, 1005 (N.D. Cal. 2008).

   "Due process requires that a defendant have 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Adv.

1   Skin & Hair, 858 F. Supp. 2d at 1087 (internal
2   alterations omitted).  The defendant's contacts "must
3   be 'such that the defendant should reasonably
4   anticipate being haled into court'" in the forum.  Id.
5   at 1088 (internal alterations omitted).  Personal
6   jurisdiction may be "general" (i.e., "all-purpose") or
7   "specific" (i.e., "case-specific").  Id.; Daimler AG v.
8   Bauman, 134 S. Ct. 746, 757 (2014).

**III. DISCUSSION**

10  **A.  Evidentiary Objections**
11      Plaintiff objects [41] to portions of the Fortier
12  Declaration [30-1] on various grounds, such as lack of
13  foundation, Best Evidence Rule, "vague," and
14  "conclusory."  To the extent the Court relies on
15  objected-to evidence, the Court relies only on
16  admissible evidence, and, therefore, **OVERRULES** as moot
17  Plaintiff's evidentiary objections.  See Becker v.
18  Wells Fargo Bank NA, Inc., No. 2:10-cv-2799-TLN-KJN PS,
19  2014 WL 3891933, at *2-*3 (E.D. Cal. Aug. 7, 2014).

20  **B.  General Jurisdiction**
21      General jurisdiction refers to personal
22  jurisdiction over a defendant to adjudicate any and all
23  claims against the defendant, regardless of whether
24  those claims arise from the defendant's contacts with
25  the forum.  Coremetrics, Inc. v. Atomic Park.com, LLC,
26  37 F. Supp. 2d 1013, 1016 (N.D. Cal. 2005).  The
27  standard for establishing general jurisdiction is
28

"exacting"[1] and requires that the defendant's contacts be "'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'"   Daimler, 134 S. Ct. at 754.

### 1.   TSPI

To exercise general jurisdiction over a corporation, the corporation's affiliations with the forum must "render [the corporation] essentially at home in the forum."   Daimler, 134 S. Ct. at 761 (internal quotation marks and alterations omitted). The "paradigm" of a corporation's "home" is its place of incorporation and its principal place of business, but a corporation may be subject to general jurisdiction elsewhere in "exceptional case[s]" where a "corporation's operations in a forum . . . [are] so substantial and of such a nature as to render the corporation at home in that State."   Daimler, 134 S. Ct. at 761 & n.19.

Here, TSPI is incorporated and has its principal place of business in Canada.   Fortier Decl. ¶ 3.   As such, to establish general jurisdiction over TSPI, Plaintiff must make a prima facie showing that this is an "exceptional" case where TSPI's contacts with California are "so substantial and of such a nature as

---

[1] Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).

6

1  to render the corporation at home" in California.

2  Daimler, 134 S. Ct. at 761 n.19.

3      The U.S. Supreme Court in Daimler held out Perkins

4  v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), as

5  "the textbook case of general jurisdiction

6  appropriately exercised over a foreign corporation that

7  has not consented to suit in the forum." Daimler, 134

8  S. Ct. at 755. In Perkins, the defendant, a foreign

9  corporation incorporated under the laws of the

10 Philippines, had temporarily moved its principal place

11 of business to Ohio to avoid the Japanese occupation of

12 the Philippines during World War II. Id. at 755-56.

13 The facts of this case are not analogous to Perkins, as

14 TSPI maintains its principal place of business in

15 Canada, and there is no evidence that TSPI has ever

16 operated out of California.

17      Plaintiff argues that TSPI's decision to

18 incorporate its wholly-owned subsidiary, Temple Street

19 Productions (US), Inc. ("TSP(US)"), under California

20 law and place TSP(US)'s principal place of business in

21 California should subject TSPI to general jurisdiction

22 in California. Opp'n 8:2-9:27; see Fortier Dep. 15:3-

23 16:3; Lowe Decl., Ex. D. Plaintiff also provides

24 evidence showing that TSPI calls TSP(US) its "LA

25 office" and "US office" and that TSPI's website,

26 templestreetproductions.com ("Website"), lists two

27 addresses and telephone numbers for "Temple Street

28

Productions," with one location in California and one location in Canada.  Hendricks Decl., Exs. E-F; <u>see</u> Opp'n 8:2-9:27.  TSP(US) is also controlled by the individuals who control TSPI, and both TSP(US) and TSPI are in the same business of tv and film production. Lowe Decl., Ex. D.; Temple Street Prods.' Resp. to First Special Interrogs. No. 9 (Ex. A to Lowe Decl.), ECF No. 40-1; Lowe Decl., Ex. D; Fortier Decl. ¶ 3. For the following reasons, such facts are sufficient to make a prima facie showing that TSPI is at "home" not only in Canada, but also in California.

The above facts are distinguishable from the facts in <u>Daimler</u>, where "neither [the parent] nor [the subsidiary] [was] incorporated in California, nor [did] either entity have its principal place of business there."[2]  134 S. Ct. at 761.  Here, TSPI's wholly-owned

_____

[2] The U.S. Supreme Court in <u>Daimler</u> disrupted Ninth Circuit precedent regarding general jurisdiction over parent corporations based on subsidiary contacts with a forum.  The Supreme Court held that the Ninth Circuit's "agency theory" of general jurisdiction, which attributes a subsidiary's contacts to the parent when the subsidiary "'performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services,'" could "in no event . . . be sustained." <u>Id.</u> at 758-59.  The Supreme Court stated that the Ninth Circuit's finding of general jurisdiction "rested primarily on its observation that MBUSA's services were 'important' to Daimler," and found that "[f]ormulated this way, the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer." <u>Id.</u> at 759.  The Supreme Court stated that the Ninth Circuit's "importance" rationale "appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary

1 subsidiary is both incorporated and has its principal

2 place of business in California, and additional facts

3 further strengthen the position that TSPI is at "home"

4 at its "LA office" in California.  While merely doing

5 business in a forum does not a "home" make, Daimler

6 leaves open the possibility that a parent corporation's

7 choice to incorporate and headquarter its subsidiary in

8 the forum may, in some instances, be "affiliations with

9 the State [that] are so 'continuous and systematic' as

10 to render [the parent] essentially at home in the forum

11 State.'"  Id.  Though the precise bounds of Daimler are

12 unclear, the facts supplied by Plaintiff establish a

13

14

15

---

16 or affiliate."  Id.

17     Yet the Supreme Court noted that general jurisdiction is not
necessarily limited to only those forums where the corporation is

18 incorporated or has its principal place of business, as
demonstrated by Perkins and alluded to in Goodyear when the Court

19 mentions, and does not reject, the idea of piercing the corporate
veil for jurisdictional purposes, see Goodyear Dunlop Tires

20 Operations, S.A. v. Brown, 131 S. Ct. 2846, 2857 (2011).
Daimler, 134 S. Ct. at 760-61.

21     It also does not appear that the Supreme Court completely
rejected a theory of general jurisdiction based on a parent

22 corporation's contacts with a forum through its subsidiary,
though the bounds of such general jurisdiction are unclear.  The

23 Supreme Court seemed to engage in a mini analysis of such general
jurisdiction, but focused not on the subsidiary's contacts with

24 the forum, but on the parent's engagement with the forum, even if
the parent's contacts with the forum were by way of its

25 subsidiary: e.g., the Supreme Court found that the parent's
contacts with the forum did not render it at "home" because

26 neither the parent nor the subsidiary were "incorporated" in
California, nor did the parent or the subsidiary have its

27 principal place of business in California.  Id. at 761-62.

28

1    prima facie showing of general jurisdiction over TSPI

2    under <u>Daimler</u>'s facts and rationale.[3]

3        2.   <u>Fortier</u>

4        The "paradigm" for general jurisdiction over an

5    individual is "the individual's domicile." <u>Goodyear</u>

6    <u>Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct.

7    2846, 2853 (2011).  But courts have, in rare instances,

8    exercised general jurisdiction over an individual when

9    the individual's contacts with a forum are so

10   substantial that "the defendant can be deemed to be

11   'present' in that forum for all purposes" so that

12   exercising general jurisdiction over the defendant does

13   not offend traditional notions of fair play and

14   substantial justice.[4] <u>Yahoo! Inc. v. La Ligue Contre Le</u>

15   ───────────────

16       [3] Regarding the Ninth Circuit's "alter ego" theory of
     general jurisdiction, <u>see</u> <u>Stewart v. Screen Gems-EMI Music, Inc.</u>,
17   No. 14-cv-04805-JSC, 2015 WL 890994, at *8 (N.D. Cal. Mar. 2,
     2015), which was left undisturbed by <u>Daimler</u>, <u>see</u> 134 S. Ct. at
18   758, the Court finds that Plaintiff failed to submit evidence,
     which, if true, would establish the second prong of the alter ego
19   exception.  <u>See, e.g.</u>, <u>Long v. Nationwide Legal File & Serve,</u>
     <u>Inc.</u>, No. 12-CV-03578-LHK, 2013 WL 5219053, at *7 (N.D. Cal.
20   Sept. 27, 2013); <u>Ferrigno v. Phillips Elecs. N. Am. Corp.</u>, No.
     C-09-03085 RMW, 2010 WL 2219975, at *4 (N.D. Cal. June 1, 2010);
21   <u>Lisa McConnell, Inc. v. Idearc, Inc.</u>, No. 09-CV-00061-IEG (AJB),
     2010 WL 364172, at *8 (S.D. Cal. Jan. 22, 2010).
22

23       [4] <u>See, e.g.</u>, <u>Cohen v. Hansen</u>, No. 2:12-CV-1401 JCM (PAL),
     2013 WL 3200093, at *3-*4 (D. Nev. June 24, 2013) (finding that
24   defendant's regular physical presence in the state (two to three
     days a month), his significant business contacts, his ownership
25   of and CEO-position in a corporation headquartered in the forum,
     and defendant's disregard for the in-forum corporation's
26   corporate form established general personal jurisdiction); <u>Span</u>
     <u>Constr. & Eng'g, Inc. v. Stephens</u>, No. CIV-F-06-0286 AWI DLB,
27   2006 WL 1883391, at *5-*6 (E.D. Cal. July 7, 2006) (giving

28

Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).  An individual's frequent visits to a forum, or even his owning property in a forum, do not, alone, justify the exercise of general jurisdiction over him.  See Span Constr. & Eng'g, Inc. v. Stephens, No. CIV-F-06-0286 AWI DLB, 2006 WL 1883391, at *5 (E.D. Cal. July 7, 2006).

Fortier's domicile is Canada.  Fortier Decl. ¶ 2. Fortier has never lived in California, does not own property in California, does not maintain any bank accounts in California, and does not, in his individual capacity, regularly conduct business in California. Id.  Plaintiff argues that Fortier should be subject to general jurisdiction in California because Fortier is CEO, Director, and has an ownership interest in TSP(US); because Fortier has made business trips to California ("eight or nine"); and because Fortier listed address on TSP(US)'s Statement of Information is TSP(US)'s California address. Opp'n 8:2-24; Lowe Decl., Ex. D; Fortier Dep. 15:3-13, 52:6-8.

Fortier's position as CEO and Director of TSP(US), including his act of filling out TPS(US)'s Statement of

---

examples of where general jurisdiction was exercised over a non-resident individual and noting that "constant and extensive personal and business connections with a state are the equivalent of approximate physical presence" conferring general jurisdiction over an individual, but that business activity requiring "occasional presence in a state" is not sufficient contacts for general jurisdiction).

1  Information and his indirect ownership interest in
2  TSP(US), cannot subject Fortier to general jurisdiction
3  because such contacts with California are not contacts
4  made by Fortier in his individual capacity.[5]  The
5  address listed by Fortier in TSP(US)'s Statement of
6  Information was TSP(US)'s address, not a personal
7  address.  Fortier's "eight or nine" visits to
8  California in his lifetime do not subject Fortier to
9  general jurisdiction in California.  See id.  As such,
10 Plaintiff has failed to make a prima facie showing of
11 general jurisdiction over Fortier.
12 **C.  Specific Jurisdiction**
13     "Specific jurisdiction exists where the cause of
14 action arises out of the defendant's [purposeful]

----

[5] See Swenson v. Murchison, 507 F. Supp. 509, 511-12 & n.3 (N.D. Cal. 1981); cf. Martensen v. Koch, 942 F. Supp. 2d 983, 992 (N.D. Cal. 2013); see also Fairchild v. Barot, 946 F. Supp. 2d 573, 577-78 (N.D. Tex. 2013) (holding that an in-state corporation's non-resident officer did not have sufficient contacts to establish general jurisdiction over him where officer did not live in Texas and, in his individual capacity, did not own real property, maintain bank accounts, have an agent for service of process, pay taxes, conduct business, or maintain a personal mailing address in Texas); Nautilus, Ins. Co. v. Green Eye Tech., LLC, Civil Action No. 11-7322, 2012 WL 5451808, at *5 (E.D. Pa. Nov. 8, 2012) (stating that "personal jurisdiction cannot be exerted 'over an individual defendant whose only contacts with the forum state were taken in his or her corporate capacity'"); In re Terrorist Attacks on Sept. 11, 2001, 718 F. Supp. 2d 456, 470-71 (S.D.N.Y. 2010) (stating that general jurisdiction "over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity").

contacts with the forum state, even if those contacts
are isolated and sporadic." Google Inc. v. Rockstar
Consortium U.S. LP, No. C 13-5933 CW, 2014 WL 1571807,
at *6 (N.D. Cal. Apr. 17, 2014).  The Ninth Circuit
applies a three-prong test to determine whether the
exercise of specific jurisdiction comports with due
process: "1) the defendant must purposefully avail
herself of . . . the forum by some affirmative act or
conduct; 2) the plaintiff's claim must arise out of, or
result from, the defendant's forum-related contacts;
and 3) the extension of jurisdiction must be
'reasonable.'" Adv. Skin & Hair, 858 F. Supp. 2d at
1089. The plaintiff bears the burden of establishing
the first two prongs, and if the plaintiff succeeds,
"'the burden then shifts to the defendant to "present a
compelling case" that the exercise of jurisdiction
would not be reasonable.'" Id.

Additionally, Fortier's actions on behalf of TSPI
will be imputed to both Fortier and TSPI for purposes
of specific jurisdiction because Plaintiff has
sufficiently shown that Fortier was acting as TSPI's
agent with regard to the alleged activities and that
Fortier "control[led] or directly participate[d] in the
alleged activities." Martensen v. Koch, 942 F. Supp.
2d 983, 992 (N.D. Cal. 2013).[6]

_____

[6] Ninth Circuit "courts have held in the context of specific
jurisdiction that the corporate form does not protect an

1          1.   <u>Purposeful Availment</u>

2          The first prong of specific jurisdiction "includes

3    both purposeful availment and purposeful direction" and

4    "may be satisfied by purposeful availment of the

5    privilege of doing business in the forum; by purposeful

6    direction of activities at the forum; or by some

7    combination thereof." <u>Yahoo!</u>, 433 F.3d at 1206.

8    Purposeful availment is "most often used in suits

9    sounding in contract," and purposeful direction is

10   "most often used in suits sounding in [intentional]

11   tort." <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606

12   F.3d 1124, 1128 (9th Cir. 2010); <u>see</u> <u>Holland Am. Line</u>

13   <u>Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 459 (9th

14   Cir. 2007).

15         Plaintiff asserts claims of copyright infringement

16   and breach of implied contract.  A claim for copyright

17   _____

18   individual acting in his official capacity" when either the
     corporation "'is the agent or alter ego of the individual,'" or
19   where the individual controls or directly participates in the
     alleged activities, i.e., "'where there is an identity of
20   interests between the corporation and the individual[].'"
     <u>Martensen</u>, 942 F. Supp. 2d at 992; <u>Fractional Villas, Inc. v.</u>
21   <u>Reflections</u>, No. 08CV1423 DMS (AJB), 2010 WL 1568509, at *2 (S.D.
     Cal. Apr. 19, 2010); <u>see also</u> <u>Keeton v. Hustler Magazine, Inc.</u>,
22   465 U.S. 770, 781 n.13 (1984) ("[W]e today reject the suggestion
     that employees who act in their official capacity are somehow
23   shielded from suit in their individual capacity").
          Here, Plaintiff's allegations clearly state that Fortier
24   directly participated in the alleged infringement of Plaintiff's
     copyright and thus that Fortier had control and directly
25   participated in the alleged activities; and the allegations and
     supporting facts make clear that Fortier, as co-owner and an
26   officer of TSPI, has, and has acted with, a unity and "identity
     of interests" with TSPI.  <u>Reflections</u>, 2010 WL 1568509, at *2.
27

28                                14

infringement "is often characterized as a tort," id.
(citing Columbia Pictures, 106 F.3d at 289), and
"willful infringement is an intentional tort," Wash.
Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 674
(9th Cir. 2012).  Plaintiff sufficiently alleges
willful copyright infringement.  See Compl. ¶¶ 15-27;
Wash. Shoe Co., 704 F.3d at 674.  Because Plaintiff
also asserts a contract claim, the Court will analyze
Defendants' contacts under both frameworks.  See
Yahoo!, 433 F.3d at 1206.

           a.  *Purposeful Direction*

    The Ninth Circuit evaluates "purposeful direction"
using the three-part "Calder-effects" test, under which
"'the defendant allegedly must have (1) committed an
intentional act, (2) expressly aimed at the forum
state, (3) causing harm that the defendant knows is
likely to be suffered in the forum state.'"  Brayton,
606 F.3d at 1128.  The defendant need not have any
physical contact with the forum.  Id.

           i. *Intentional Act*

    An intentional act for purposes of the effects test
requires only an intent to perform an actual, physical
act in the real world, regardless of any intent to
accomplish a result or consequence of that act.
CYBERsitter, LLC v. People's Republic of China, 805 F.
Supp. 2d 958, 969 (C.D. Cal. 2011).

Here, Plaintiff has sufficiently shown an intentional act by Fortier and TSPI (acting through Fortier).[7]  Plaintiff alleges that Fortier and TSPI, without Plaintiff's permission, willfully copied "wholly original elements from Plaintiff's Screenplay 'Double Double'" in the <u>Orphan Black</u> Series, which Defendants intentionally broadcast, distributed, published, or otherwise exploited in violation of Plaintiff's copyright in the Screenplay.  Compl. ¶¶ 22-26.  The evidence shows that Fortier, acting on behalf of TSPI, traveled specifically to California to "pitch" the Series and to meet with TSPI's California agent, CAA, to discuss the Series.  Fortier Dep. 52:25-57:22.  The evidence also shows that, through a "coordinated plan to distribute"[8] the Series in the United States through TSPI's subsidiaries and BBC Worldwide, which owns 25% of TSPI, Defendants advertise and sell <u>Orphan Black</u> in California.  Fortier Dep. 12:17-26:13, 56:25-57:25; Fortier Decl. ¶¶ 9, 19; New Video Channel Am. Resp. to Interrogs. Nos. 3, 4, 7-9, ECF No. 40-2.

### ii. *Expressly Aimed at Forum*

To determine whether an intentional act is "expressly aimed" at the forum, the Ninth Circuit

---

[7] <u>Marshall v. Heringer Ranches, Inc.</u>, 455 F. Supp. 285, 289 (E.D. Cal. 1979) ("A corporation can act only through its officers and agents").

[8] <u>Mattel, Inc. v. MCA Records, Inc.</u>, 296 F.3d 894, 899 (9th Cir. 2002).

follows the narrow O'Connor opinion of <u>Asahi Metal</u>
<u>Indus. Co. v. Sup. Ct. Cal., Solano Cnty.</u>, 480 U.S. 102
(1987), which states that the "placement of a product
into the stream of commerce, without more, is not an
act purposefully directed toward a forum state," which
requires "[a]dditional conduct . . . indicat[ing] an
intent or purpose to serve the market in the forum
State." <u>Id.</u> at 112; <u>see</u> <u>Holland Am. Line</u>, 485 F.3d at
459.  Examples of the requisite "additional conduct"
include advertising in the forum, "marketing the
product through a distributor who has agreed to serve
as the sales agent in the forum State," and
"creat[ing], control[ling], or employ[ing] the
distribution system that brought its [product] to" the
forum.  <u>Asahi</u>, 480 U.S. at 112.

It is undisputed that <u>Orphan Black</u> is in
California's stream of commerce.  <u>See</u> New Video Channel
Am. Resp. Interrogs., Nos. 3, 4, 7-9.  As mentioned
above, Plaintiff has shown that Fortier, acting on
behalf of TSPI, specifically made at least one trip to
California to "pitch" <u>Orphan Black</u> to broadcasters and
discuss the Series with TSPI's California agent, CAA.
The evidence also shows that TSPI engaged, through
subsidiaries and part-owners, in a "coordinated plan to
distribute"[9] the Series in the United States, and
specifically in California--<u>Orphan Black</u> is advertised,

---

[9] <u>Mattel</u>, 296 F.3d at 899.

sold in DVD, digital, and streaming format, and broadcast in California.  Additionally, TSPI's Website lists TSP(US)'s California address and telephone number at the bottom of the page that promotes Orphan Black as "Content" of "Temple Street Productions," thus associating TSPI's "LA office" with the Series. Hendricks Decl., Exs. E-F.

Such facts are sufficient for a prima facie showing that Defendants engaged in "additional conduct" evidencing Defendants' "intent" to "serve the market in" California.  Asahi, 480 U.S. at 112; see Mattel, 296 F.3d at 899; Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004).

### iii. *Harm*

Plaintiff declares that he has "suffered injury in California," including, among other injuries, harm to his copyright, which occurred in California because Plaintiff has been in California at all times relevant to this Action.  Hendricks Decl. ¶ 13.

Plaintiff provides evidence that he mailed his Screenplay to Fortier from California and that Fortier received his Screenplay in the mail.  Compl. ¶ 16, Exs. C-D; Hendricks Decl. ¶ 13.  Such facts support circumstantial evidence that Plaintiff's California return address was posted on the package for Fortier to see.  Furthermore, Plaintiff emailed Fortier from the email address, "shendricks@playboy.com," which could

support a finding that Fortier was aware that Hendricks was in Los Angeles, since Playboy's location is well-known, especially for someone working in the film and tv production industry.  Further, Fortier, by nature of his experience in tv production, almost certainly would have known that infringing on the copyright of a screenplay would likely cause harm in California, which is the "heart of the theatrical motion picture and television industry."  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1321 (9th Cir. 1998).  Indeed, California's importance to the film and tv industry is demonstrated by Defendants' decision to fly to California to "pitch" <u>Orphan Black</u>, to be represented by an agent in California, and to open a "US office" in California.  At this stage of the action, such evidence is sufficient to make a prima facie showing that Defendants' intentional acts aimed at California caused harm that Defendants knew would likely be suffered in California.

As such, Plaintiff has made a prima facie showing of "purposeful direction" to satisfy the first prong of the Ninth Circuit's three-prong test for specific jurisdiction.

b. *Purposeful Availment*

While Plaintiff does not need to additionally satisfy the distinct "purposeful availment" standard, the Court will analyze the facts under this standard as

well.  A showing of "purposeful availment" requires the
plaintiff to show that the defendant has "purposefully
availed itself of the privilege of doing business in
the forum" by "'perform[ing] some type of affirmative
conduct [that] allows or promotes the transaction of
business within the forum state.'"  Boschetto v.
Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008).

The following facts are together sufficient to
support a prima facie showing that Defendants
purposefully availed themselves of the privilege of
doing business in California[10]:
(1) Fortier, representing TSPI, met in California with
CAA, with whom at least TSPI had an agency contract, to
discuss Orphan Black.  Fortier Dep. 52:25-56:18.
(2) Defendants incorporated under California law a
wholly-owned subsidiary, TSP(US), which promotes Orphan
Black via TSPI's "Temple Street Productions" Website,
on which TSP(US)'s California address and telephone
number is listed.  Hendricks Decl., Exs. E-F.
(3) Defendants' product, the Orphan Black Series, is,
through a coordinated effort, purposely advertised,
broadcast, and sold in California.

   2.   Extent Claims "Arise Out of" Contacts

"A lawsuit arises out of a defendant's contacts
with a forum state if there is a direct nexus between
the claims being asserted and the defendant's

---

[10] See Schwarzenegger, 374 F.3d at 802.

activities in the forum." <u>Adv. Skin & Hair</u>, 858 F.
Supp. 2d at 1090.  The Ninth Circuit applies a "but
for" test to this second prong.[11]  <u>Id.</u>

Plaintiff alleges that Defendants have infringed
Plaintiff's copyright in his Screenplay by creating,
producing, distributing, publishing, and/or otherwise
exploiting the <u>Orphan Black</u> Series, which allegedly
"cop[ies] wholly original elements" from Plaintiff's
Screenplay without Plaintiff's permission.  Compl. ¶¶
24-25.  Plaintiff also claims that Defendants'
exploitation of Plaintiff's copyright created an
implied contract, and Defendants' failure to pay

---

[11] While the Ninth Circuit applies a "but for" test to
determine whether an action arises out of the defendant's
contacts with the forum, in the context of a tort that, by its
nature, is not limited to a "discrete injury," such as copyright
infringement, the plaintiff can satisfy the "but for" test by
showing that the defendant's contacts in the forum injured the
plaintiff as alleged in plaintiff's claim, i.e., that "there is a
direct nexus between the claims being asserted and the
defendant's activities in the forum," <u>Adv. Skin & Hair</u>, 858 F.
Supp. 2d at 1090.  <u>See</u> <u>Wilden Pump & Eng'g Co. v. Versa-Matic
Tool, Inc.</u>, No. 91-1562 SVW (SX), 1991 WL 280844, at *4 (C.D.
Cal. July 29, 1991); <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S
770, 780-81 (1984) (noting that a victim of a tort like libel,
where the harm occurs nationwide, and thus in multiple forums,
may choose to bring suit "in any forum with which the defendant
has 'certain minimum contacts'" satisfying due process); <u>Mattel</u>,
296 F.3d at 899 (finding that the Ninth Circuit's "but for" test
was satisfied in an action for trademark infringement and
defamation because defendants' conduct purposefully directed
toward California "allegedly caused harm in" California, even
though the alleged harm occurred outside of California as well).
Here, as in <u>Wilden</u>, literally applying the Ninth Circuit's "but
for" test would result in an "absurd result."  <u>Wilden</u>, 1991 WL
280844, at *4; <u>see</u> <u>Mattel</u>, 296 F.3d at 899.

Plaintiff resulted in Defendants' breach of the implied
contract.  Compl. ¶¶ 28-33.

The Court finds that there is a "direct nexus"
between Plaintiff's claims and Fortier/TSPI's contacts
with California, which include Fortier's promotion of
Orphan Black via meetings in California, including at
least one meeting with TSPI's agent, CAA; as well as
TSPI's coordination of the distribution of the Series
in California.  Because Fortier/TSPI's contacts with
California "allegedly caused harm in" California, the
Ninth Circuit's "but for" test is satisfied.  Mattel,
296 F.3d at 899 (analogous); Wilden Pump & Eng'g Co. v.
Versa-Matic Tool, Inc., No. 91-1562 SVW (SX), 1991 WL
280844, at *4 (C.D. Cal. July 29, 1991).

3.  Reasonableness

Because Plaintiff has made a prima facie showing of
the first two prongs of specific jurisdiction, it is
Defendants burden to make a prima facie case that
exercising jurisdiction over Defendants would violate
Defendants' due process rights.  See Adv. Skin & Hair,
858 F. Supp. 2d at 1091.

Defendants argue that exercising jurisdiction over
Fortier and TSPI would be unreasonable and inconvenient
because the "development and production of the series
occurred entirely in Canada," and because Defendants
would "be required to incur the costs of having
numerous witnesses . . . come to California to testify

at trial."  Mot. 13:24-14:2.  Such arguments do not support unreasonableness, as mere inconvenience will not suffice, especially in this age of air travel and when Canada shares the same continent with the United States.  Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990) (holding that "it is not enough . . . [to] demonstrate that some other forum is more reasonable than California, it must show a due process violation; it must show that jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent'").  Furthermore, Defendants' choice to incorporate and headquarter in California a wholly-owned subsidiary, which TSPI calls its "LA office," makes it extremely unlikely that Defendants' due process rights would be violated if they had to defend an action in California.  See, e.g., Mattel, 296 F.3d at 899 ("[J]urisdiction over the foreign defendants, who are represented by the same counsel and closely associated with the domestic defendants, is reasonable.").

In the Ninth Circuit, reasonableness is assessed by the following factors:
(1) the extent of the defendant's purposeful interjection into the forum;
(2) the burden on the defendant in litigating in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

Adv. Skin & Hair, 858 F. Supp. 2d at 1091.

The first factor, "the extent of the defendant's purposeful interjection into the forum," "'parallels the question of minimum contacts.'" Id. As discussed above, Defendants have an "LA office" that serves as its "US office," which Defendants intentionally incorporated under California law. Defendants also allegedly have, or had, agency contracts with CAA in California, purposely visited California to promote their product, and coordinated efforts to advertise and sale their product in California. Such purposeful interjection into California by Defendants makes this factor weigh in favor of reasonableness.

The second factor, which considers the burden that litigating in the forum imposes on the defendant, "must be examined in light of the corresponding burden on the plaintiff." Id. Defendants argue that they would be burdened if they had "to incur the costs of having

numerous witnesses . . . come to California to testify at trial." Mot. 13:24-14:2. On the other hand, forcing Plaintiff to litigate his claims, based on U.S. and California law, in Canada, a foreign country, would be a much more significant burden than mere travel expenses or inconveniences. As such, this factor weighs in favor of reasonableness.

The third factor evaluates "the extent of any conflict with the sovereignty" of the defendant's home country or state. Adv. Skin & Hair, 858 F. Supp. 2d at 1091. As Defendants have not provided any evidence of any such conflict, this factor weighs in favor of reasonableness.

The fourth factor "considers California's interest in adjudicating the controversy." Id. Because Plaintiff is a California resident, and because Plaintiff's claims are based on California and United States law, California has a strong interest in adjudicating this controversy. See id. This factor weighs in favor of reasonableness.

The fifth factor, which considers the efficient judicial resolution of the controversy, primarily focuses on the location of the evidence and the witnesses. Id. Here, Defendants have asserted that the majority of the witnesses and evidence is in Canada. Mot. 13:24-14:3; Fortier Decl. ¶¶ 17-18. As

Plaintiff has not established otherwise, this factor weighs against reasonableness.

The sixth factor is the importance of the forum to a plaintiff's interest in convenient and effective relief, though "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the Plaintiff." Ziegler v. Indian River Cnty., 64 F.3d 470, 476 (9th Cir. 1995). However, as discussed above, Plaintiff would be more than merely inconvenienced if forced to litigate his claims in a foreign country; such a situation could threaten Plaintiff's "interest in convenient and effective relief." Though Defendants assert that Canada is "an adequate and suitable forum" to hear Plaintiff's claims, Defendants fail to provide any evidence supporting such a claim.[12] As such, this factor weighs in favor of reasonableness.

While the plaintiff bears the burden of establishing the final factor, "that an alternative forum is not available," "this factor is significant only if other factors weigh against an exercise of

---

[12] Cf., e.g., Halo Creative & Design Ltd. v. Comptoir Des Indes Inc., Case No. 14 C 8196, 2015 WL 426277, at *2 (N.D. Ill. Jan. 29, 2015) (noting that the Court was unsure "whether a Canadian Court could, in fact, enforce United States intellectual property laws"); see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Inc., 243 F. Supp. 2d 1073, 1094 (C.D. Cal. 2003) (noting that the defendant had "not demonstrated that *effective* relief--remedies for infringement of U.S. copyrights within the United States--would be available other than in a U.S. forum").

jurisdiction." <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Inc.</u>, 243 F. Supp. 2d 1073, 1094 (C.D. Cal. 2003).  Plaintiff fails to show that an alternative forum is not available, but because most of the factors weigh in favor of reasonableness, this factor is not significant.  Furthermore, as discussed above, it is unclear whether Defendants' preferred forum in Canada would provide effective relief for Plaintiff's claims. As such, this factor is not significant.

The above factors, on the whole, weigh in favor of reasonableness.  The Court finds that Plaintiff has made a prima facie showing of specific jurisdiction over both Fortier and TSPI.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Temple Street Productions Incorporated and David Fortier's Motion to Dismiss for Lack of Personal Jurisdiction [30].

**IT IS SO ORDERED.**

DATED: June 8, 2015

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge